We'll hear argument next in Case 13-935, Wellness Int'l Network v. Sharif. Ms. Stagy. Mr. Chief Justice, and may it please the Court, Stern v. Marshall held that a bankruptcy judge may, consistent with Article III, enter judgment in an action that stems from the bankruptcy itself. The claim at issue in this case meets that test. Wellness asked the Bankruptcy Court to decide the first and most fundamental question that arises in every bankruptcy case. What property became part of the debtor Sharif's bankruptcy estate under Bankruptcy Code Section 541 on the day Mr. Sharif filed for bankruptcy? As this Court recognized over 100 years ago in Mueller v. Nugent, it is essential that bankruptcy judges have that authority. As long as there have been bankruptcy laws, there have been debtors like Mr. Sharif who devised creative ways to keep property in their own possession and out of the hands of their trustees and creditors. Here, Mr. Sharif's case is a case of fraudulent conveyance against a non-creditor is an Article III violation. It's a Stern claim, essentially. Yes, Your Honor. Or a non-Stern claim. So why isn't this the same thing? Because this action is against the trustee. I mean, it's not the same thing because he actually possesses this trust. It's in his name as trustee. Yes. So it's a little bit – it's a lot different. Yes, but the allegations of the complaint were that Mr. Sharif owned the property and to the extent the trust existed, it should be ignored by virtue of the way he handled the trustee. But that's the same in a fraudulent conveyance. It was his property, and he was just trying to deny his other creditors the benefit of that money. So it's not quite that. Well, it's different, Your Honor, because in a fraudulent transfer claim, the debtor actually passes title over to someone under the definition of 548 or the U.S. Charter. But here he's claiming that the beneficiary has title. Yes. But that's the very dispute that the Court was asked to decide under Thompson v. Magnolia Petroleum. The issue is not what the debtor claims his title is, but whether he has actual possession. And so here, the assets that we have here are the condominium that he lives in, and he's lived in for 20 years, a pharmacy business. He's a pharmacist that he's been operating for many years, and that in the past he had reported as his business on his personal tax return. We have his own personal retirement account that somehow inexplicably ended up in the mother's grantor trust, and then we have bank accounts that he owned. And so the allegations of the complaint were that he really owned this, and this charade that he put up in front of the bankruptcy court of saying this is owned in a trust, that was the dispute the Court had to consider. In a way, I think to think of it as differently from a fraudulent transfer action where you're going against a true third party to whom title has passed, that chosen action, the intangible right to sue on the fraudulent transfer claim, or as in Stern, the right to bring the breach of contract or tort claim, in these other cases, that asset, the right to sue, exists in the estate at the time of its creation. Alito Who is the beneficiary of this trust? His sister, right? Well, that's That's what's claimed. That's what's claimed, yes. Alito And so what would be the effect of a declaration by the bankruptcy court that that Respondent was the alter ego, that it was actually his property? Would the sister be bound by that judgment? Would the sister have to appear in the bankruptcy court as if she were a creditor? Well, yes, she would be bound, because if we accept their characterization, the trustee, through his litigation conduct, binds the beneficiary under well-established Illinois law, the law of, it's just basic trust law. But more importantly, she did appear in this action. She appeared through counsel. She, too, was subpoenaed. She, too, failed to produce the trust documents in response to requests. She was given notice of the case as a creditor and could have filed a claim. And there was a safety valve for her, and she's, in fact, exercised her ability to have that safety valve. She could have filed a proof of claim in the case. Sotomayor Would the court, the bankruptcy court, have had the power to notify her or to subpoena her to come in as a party? Yes, because if she was a necessary party to the action, the normal rules of Federal civil procedure apply through the bankruptcy rules, and she would have been required to be brought in. She's not a necessary party under the construct they created. Right. They created this construct of this trust. Breyer So he's going to write about the basic facts. Creditor wants some money from debtor who's in bankruptcy. Creditor says, I look at your list of assets. It seems to me something's missing. I have a piece of paper here that you filed one year ago at the bank which says you have $5 million more. Where is that on the list? He thinks about it and he says, oh, yeah, there was $5 million more. But that wasn't mine. That belonged to Saudi Arabia. Or that belonged to my cousin. Or, and so they say, let's prove it. And that's what we're at issue. That's what's at issue. Can the bankruptcy court, it happens here that the claim is not Saudi Arabia, the claim is not my cousin, the claim is that the $5 million was a living trust of which there seems to be very little record, which belonged to his mother. But in principle, it's no different, is it, in your view? No. That's exactly what we have. A simple claim. We'll hear from the other side, which will say it's very different. Right. And that is the basis of bankruptcy. If we think about what bankruptcy is and what it historically always has been, it's been about the in rem jurisdiction of the court to take control of the debtor's property. And this case really is easy because the debtor is in possession of the property. The nature of this property, he's personally using it. Is that the only basis for distinguishing Stern? No, it's not, Your Honor. There's a number of reasons. What else? Okay. This is decided as a matter of Federal law. Section 541 determines what comes into the estate and what doesn't. It's not. Well, whether there's a trust or not is not a question of Federal law, is it? But the question of whether something belongs to the bankruptcy estate is a Federal question, even if State law informs the answer. This Court's precedent under other statutes. It's Law v. Siegel last year. It's a question of Federal law even if State law provides the answer? Well, yes, Your Honor. And that's the Court has interpreted Federal statutes dealing with property rights, the Paulson. And that wasn't the case in Stern? It was not the case in Stern. The claim there was. Well, isn't it likewise there? What was in the estate is a question of Federal law, even if State law provided the answer. The difference here would be if there had been a dispute between the debtor in Stern and her bankruptcy trustee over who got the right to go sue Pierce, the son-in-law, that would have been this case. That would have been the 541 question. The chosen action is what exists in the estate at the time of its creation. And so that chose of action, when you go out and you seek to go liquidate that, bring the lawsuit, that's the augmenting-type claim that the Court has talked about it in its precedent in Stern and in Northern Pipeline. Suppose that Illinois law, suppose Illinois law governs the issue of the trust. And suppose Illinois law says that when it is held that the trustee is, that the trust is the trustee's alter ego, that the property does not become the property at issue, it does not become the property of the trustee until there is a judicial declaration that that occurs. Well, I don't think that changes the analysis, because ultimately in a bankruptcy case, if you are going to have a dispute with the debtor. So that would be a question of the status of this under Illinois law, not under Federal law, right? It would inform the decision, but ultimately whether the property comes into the estate or not is determined under Section 541. And so the court of appeals who have addressed this issue, and we list a number of those cases in the third footnote in our brief, all are very uniform. They are looking to State law in a variety of different contexts to figure out what the debtor's rights are on the property, because that's the Buetner decision of this Court. But ultimately, when you make that final determination that it is property of the estate, you look to 541. And Congress would have intended that disputes over trust be part of that 541 determination by its inclusion of Section 541d, which talks about what title the debtor holds, whether it's legal title or equitable title, which is directly, you know, driven toward trust, because that's when you have a division of title. And so it was intended that Federal law would cover that. I mean, I also think that, you know, a key difference between this and Stern in the form of claim that we have here is this is being brought against the debtor. This isn't being brought against a third party who's been hauled into bankruptcy court against their will. The debtor has chosen to file a bankruptcy knowing by virtue of the statute that he or she will be required to turn over their property to the bankruptcy trustee, that there may be disputes over that, and there can be legitimate disputes. It doesn't necessarily just have to be a dishonest debtor like we would contend we have here. And that they're going to be in front of the bankruptcy judge in the first instance having those disputes determined. It's part of the Federal scheme exactly what bankruptcy is supposed to accomplish, which is to get all of the debtor's property put into the bankruptcy estate for distribution to creditors. That's the central key point of every bankruptcy case. And if you don't do that, you lose your discharge like Mr. Sharif. It really is, this action really is the flip side of the denial of his discharge, which no one disputes the bankruptcy judge had the authority to decide. She couldn't decide if he should receive a discharge if we didn't know what it was he was supposed to be doing in the case in terms of the property that he had. And the two claims really overlap each other. They're the flip side of each other. So that's why I think this is different than a cause of action against a third party such as you had in Stern or Northern Pipeline or Grand Financiera and the like. Sotomayor, consent question completely. Sure. Basically, the argument of the SG and the of you and the SG is that you need express consent, or I guess the other side's saying you need express consent and they didn't give express consent. How do you get around that? Well, Your Honor, we think that you don't need to the court has held in roll that implied consent is permissible. The argument is based upon the bankruptcy rule, Bankruptcy Rule 7012. And if you look at Section 157C, it uses the term express consent and then just the term consent. In connection with Section 157C2, which deals with the consent of a litigant to proceed to judgment on a non-core Stern claim, it uses the word consent. So if we assume Congress meant to require express consent in 157E, dealing with consenting to a jury trial right, they must not have required express consent, and then we have a rule that's going beyond what the statute provides. That's exactly the situation in roll out. Scalia, we don't have to reach both these questions if we find one of them in your favor, do we? That's correct. If you don't find it to be a Stern claim, then consent would not be. Which one is the better one? Which is the prettier question? Or the one that you think has more real-world effect? Well, I think the first question has real-world effect in the sense that if the court were to take away from bankruptcy judges the power to litigate disputes with the debtor over what they possess comes in or out of the bankruptcy estate, you'd see a sea change in how cases were handled. Because that's the basic dispute you're going to have with a debtor. You're going to have three disputes with a debtor. It's going to be a sea change. Even if consent were sufficient to confer jurisdiction, that's the question. Are the bankruptcy courts more confused by question 1 or question 2? I think there's a lot of confusion out there, Your Honor. And I think that certainly people are also concerned about the consent question, because the situation that you have today is that both parties could consent and the party who loses can turn around and say, well, there's a question about whether I really consented or not or whether it was appropriate. So both are problems for the courts right now. Can I ask, you said implied consent should be sufficient. How would you go about implying consent? When would there be implied consent? On the basis of what? Well, I think you would have implied consent where you have here, you have a debtor who moved for summary judgment. He asked the bankruptcy judge to enter judgment in his behalf. He never sought withdrawal of the reference. He never sought to ask the district court to take this matter away from him. We have, I think, the act of filing a bankruptcy puts you in front of the bankruptcy judge for at least the basic administration of estate, property of the estate determinations, but I would submit for all matters involving the debtor, because they all really do relate to that. It's basically property of the estate determinations, whether property can be claimed as exempt, and whether the debtor gets the discharge. That's what will involve 99 percent of litigation with the debtor. You've said, I think, that the consent has to be knowing and intelligent. Is there something that has to be told to the debtor to make the consent knowing and intelligent? Congress didn't require that here in Section 157, and, you know, it's a maxim of the law that knowledge, you know, lack of knowledge of the law is no excuse. The statute puts you on notice that there is a list of proceedings, the core proceedings, that are like the old summary proceedings under the Bankruptcy Act, that the bankruptcy judge can decide to final judgment without the consent of the parties, and the statute also puts you on notice that if you don't agree with that, you can ask the bankruptcy judge to make a determination, you can ask the district court judge to make a determination. Sotomayor There is a problem, however, here, and that problem is that Stern wasn't decided until the appeal. On rebuttal, I want to talk about the American Colleges' appellate waiver argument. Yes, Your Honor. Thank you. Roberts Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. We agree with Petitioners on both questions presented. With respect to the first question, we don't think this is like a Stern claim for the two reasons that have already been discussed. That is that the question of whether something is property of the estate under Section 541 stems from bankruptcy itself. Sotomayor But that's too broad an answer, because that would be true of fraudulent conveyances. Mr. Gannon Well, and it also does not involve an attempt to augment the estate. We're talking about a determination about the estate. Sotomayor How about a simpler rule? If you have legal title to something, if you possess it physically or you have legal title to it, then the bankruptcy court can determine? Mr. Gannon Well, I think that's the case. Sotomayor The trustee had legal title. He's just claiming that there's an equitable requirement to hold it for someone else. Mr. Gannon And under 541d, if it is true that the trustee only holds bare legal title and then ultimately the trust is not looked through because it's found not to exist or because it's found to be the alter ego of the trustee, then the equitable interest would not have come into the estate, and so that's true. Sotomayor I'm trying to get away from the augmentation argument, because it's really difficult to apply in a case like this. Anything that's in the estate augments it, or anything that comes off the estate. Mr. Gannon Well, I don't think that that's true. I think that when the Court in Stern and Grand Financiera and Northern Pipeline was talking about the difference between questions that are — that stem from the bankruptcy itself and are integral to the restructuring of the debtor-creditor relationship, they were talking about the baseline that you have there with the estate as the property. Sotomayor Tell me why my rule is not simpler. If you physically possess it at the time you declare bankruptcy, or you have legal title to it, then the bankruptcy — then it's not a Stern claim. Mr. Gannon I suppose that that — what this is fainting towards is the system that the parties have talked about that developed under the 1898 Act that ended up being a relatively reticulated system, as described in the And we agree with Petitioners that on facts like these, where there was possession of the property, which we think indisputably the trustee had possession of the trust assets here, and that would be enough to give the bankruptcy judge the jurisdiction or the referee under the 1898 Act cases, jurisdiction to determine who had title. And then if the Court — Sotomayor In Stern we said we would look to history. Mr. Gannon Pardon? Sotomayor In Stern we said we would look to history. Mr. Gannon Portions of the Stern opinion looked to history, but it did not indicate that the historical precedents for this were going to be dispositive. And we don't think that the rationale of Stern, Grand Financiera, and Northern Pipeline requires that as an Article III matter, nor does the statute here, because the statutory definition of property of the estate refers to property wherever located and by whomever held. It still ultimately has to be property of the debtor. And so if you're going to say that if it's — if the debtor holds title to the property, that is the ultimate determination. And you say that that's not a — Sotomayor So let's go to the hypothetical. The sister holds title, but you're saying that it belonged to him. That she holds legal title, but in fact, she — it's really his money. Mr. Gannon Well, I think — I think it would — if she held legal title and the property had already been transferred to her and that's what the bankruptcy judge determined, then it wouldn't be property of the estate. And — but we don't know the answer to the question of who holds title until the so-called Stern claim or non-Stern claim has already been decided. And so I think that that's the trouble with assuming that the answer to the title question or the ownership question, because that is the answer to the property of the estate question. We can't — we can't wait to know the — the merits determination before we know whether it's a Stern claim, I think, is the problem with approaching it that way. But it is sensible to say that the question of whether something was property of the estate on day one, such that it was the debtor's property, because that's the determination here, that that is not like a Stern claim. It's not like a fraudulent conveyance or avoidable transfer where you're attempting to go out after the bankruptcy has already been initiated and trying to reduce a chosen action to judgment and liquidate it and therefore increase the size of the estate after the fact. Roberts, counsel, on the consent question. Is — under your theory, is there anything wrong with Congress adding a proviso to every Federal contract saying the contractor hereby agrees to waive any Article III objections to having disputes with the government resolved by something we'll call the congressional courts where the individuals serve for three years and Congress has a lot more sway over their decisions? Well, I suspect, yes, if for no other reason than be — I mean, not even I suspect. Yes, why? I forgot the question. Yes, if for no other reason than be — Yes, it's okay. Yes, that that would be a problem. I'm sorry, that that would — that would not be permissible. I've forgotten the question. But the reason why this would not be permissible — I thought it was an unforgettable question. I don't know why. I promise you I won't forget it now. Yes. But — Yes, we have no bananas. The reason — the reason why this would be a problem is because of the structural concerns that you raised there, which we don't think are present here. When you said that those were congressional courts that would be more subject to supervision by Congress, we do not think that that describes the bankruptcy system. We think the bankruptcy system is akin to the magistrate judge system, where this Court has repeatedly recognized that the structural concerns that were at issue in Shore were not sufficient to create a problem. There are two things here. There is both the consent of the parties, but also adequate judicial control, both in the aggregate over bankruptcy judges who were appointed by and removed by Article III judges, and also in every individual case, because they don't get any bankruptcy cases. Roberts. Judicial control in the sense that you have deferential appellate review and whatnot, but it still takes out of the Federal courts our constitutional birthright to decide cases and controversies under Article III. And it's hard for me to see how sort of vague, vague notions of, oh, well, the judges are involved there somewhere. But I don't think that this is vague. We're talking about something different from just having appellate review after the fact. We're talking here about supervision of the bankruptcy judges, just like magistrate judges, by Article III judges. They're appointed by, removed by them. They don't ever get a case unless the Court agrees to give it to them. And that seems to me the principal difference between your hypothetical congressional court scheme, which is that the parties are all not even making a voluntary choice because Congress is deeming them to have made the choice, and then also no court is able to say, I do not want the transfer to happen. And both of those things are not true here, because the parties are able to make the choice and the courts are able to withdraw the reference. The parties are always able to ask for the courts to withdraw the reference. This makes it just like the bankruptcy system with respect to whether it's a consentable constitutional violation. And so we don't think that this is like subject matter jurisdiction. And the Court in Stern said that, that the division of authority between bankruptcy judges and district court judges in 157 is not a question of subject matter jurisdiction. And we think that is why it's one that's waivable. Breyer. Can you go back to your experience in your office? I just want to know, it seems to me by memory, but I'm not positive, it is not totally unusual, and we do have the power to give two affirmative answers where either answer would be sufficient. That is, we could answer both questions. Now, is your as a representative of the Solicitor General, is your reaction the same as mine, that there are cases where a court, where we've had two questions? And we say one would be enough for the party to win, so would two, but we think it's important to answer both, and we will? I do believe that the Court has done that. I don't have any particular cases at the tip of my tongue. Perhaps so. Perhaps it's made other mistakes as well, you know. That's what I wondered. Is there any reason that strikes you that that would be a mistake? I don't know anything in the Constitution or in any precedent of this Court that prohibits it. So I think saying it is a mistake does not necessarily make it one. I think that that's something that would be in the discretion of the Court. I do think that both of these questions are independently important. It is the case that Petitioners can prevail and you can reverse the judgment of the court of appeals on either ground and without having to reach the other. I do think that until the case to the low, there probably was not confusion in the bankruptcy courts about whether questions involving the definition of the property of the estate were stern claims. And so, but I do think that there is confusion about that just by virtue of the fact that this case is here. But the second question. Alitoson Can I ask you this quick question before your time runs out? If Federal Bankruptcy Rule 7012B applies to stern claims because they are noncore, do you agree with the Petitioner that the rule is invalid because it requires express consent and the statute does not refer to express consent? I don't think you have to get to the point of saying that the rule is invalid. That's not the way the Court approached the case in Rowell where the situation was, as my friend just said, exactly parallel. The statute did not require express consent, or it did in some places, but not in this one. And the same thing is true if you contrast 157C2 with 157E. The relevant statutory provision here does not require express consent. The Federal rule of civil procedure that was applicable in Rowell did, and the Court nevertheless said that it was going to overlook the lack of an express waiver there  Kennedy Do you agree there's implied consent merely by filing a voluntary bankruptcy petition? Well, I think that the Court did not I thought that I heard that that's what the Petitioner said. When you said a voluntary bankruptcy petition? Yes. The Court didn't grant cert on that question. We do think that there's lots of other conduct here, but ultimately there's also the forfeiture after stern itself was decided that we think would be adequate to decide that there was consent in this case. Mr. Gannon, I hate to protract your presentation here. I wasn't clear about what your answer to Justice Breyer covered. Did you say there are prior cases in which we have decided two constitutional questions? I said two different questions. Ah. I think that's a What about two constitutional questions, given that we're supposed to avoid the determination of constitutional questions? I do realize that that is the general prudential rule that the Court applies, but I think that it normally does so in the context of I understand. It would be upholding the statute in both regards, and therefore I don't think that the normal concerns about constitutionality rise to the same level. Counselor, may I ask Justice Kagan? You were saying that you wanted to talk about the importance of both questions. I think you got the first one out. What in your view is the importance of the second? Well, I do think that the Court was not able to decide the consent question in the executive benefits last term, and that there is a circuit split on it. It would be very useful to know that Stern claims are the sorts of things to which parties consent or that those claims are waivable, as they are in the magistrate judge context, which we think is parallel. But the government agrees with the Petitioner that the first question, what goes into this estate, that if we had to choose between the two, which would you say is the more important? I think that it would be good to settle that for purposes of bankruptcy courts, but you would still have the unsettled consent question that has been kicking around ever since Stern and on which there is already a circuit split. And vice versa. Thank you, counsel. Mr. Hacker. Mr. Chief Justice, and may it please the Court, we agree with what I understand the Solicitor General's position this morning to be that the Stern rule is relatively straightforward, which is that a common law claim that seeks to augment the estate with third-party property cannot be withdrawn by Congress from Article III jurisdiction. We also know that the alter ego claim asserted by Wellness was a common law claim seeking to augment. Sotomayor, your client possessed something, and he says it really belonged to someone else. Don't you have to decide who it belongs to if there is no clear indication of it? And there might be a clear one, but it still begs the question. Right. Two points on that, Your Honor. Let me start with where this Court started and where the law has been for decades, if not centuries, which is that the trustee of a trust possesses, if anything at all, no more than bare legal title. And so this Court said in the Hardinsburg case, it said in Whiting Pools, and more important, maybe most importantly, there is no case anywhere to the contrary, that when a trust, a trustee of a trust declares personal bankruptcy, the trust assets do not become part of the estate at the commencement of the bankruptcy. So what Wellness had to do was establish, through its common law alter ego claim, that the trust was to bring the assets of the trust into the estate. Breyer, you are just saying that they didn't decide it correctly, but it's terribly easy to imagine a different debtor who goes into bankruptcy and he lists item 1, 2, 3, and 4. And the creditors come in and say, you know, it's awfully surprising. Four, five, six months ago, I have a similar list you gave to the National Bank, and it had 10 items on it. What happened to 6 through 10? And the debtor replies, oh, they didn't really belong to me. Why not? Because State law gives it to somebody else, because State law is the source of all property law. And they say no, and now we have a dispute. So forget about the trust. Maybe I don't see why that's special. This is simply a question of whether a bankruptcy judge can litigate who owns items 6 through 10. And one party says State law gives them to my cousin Mary, and the other party says State law gives them right to you. Now, if we say no and side with you on that one, what happens to the constitutional grant to Congress to make uniform laws of bankruptcy? I imagine it would still exist, but I can't imagine in what form. Now, you see a pretty hostile argument, so I would like to hear your reply. And I think the example is a good one, because I do think the trust is very important, because we do have decades of law on that. But the example is not problematic, because if, in that situation, the trustee says I see some other bankruptcy trustee, I see some other property, and the debtor says that's not mine, I do think it's true that there wouldn't be a litigable claim there unless the third party also asserted ownership to the property. But if that happened, if the third party says that's not the debtor's, that's all mine, I've had it for years, that's my car, that's my boat, that's my house, then I think it's absolutely clear that under that circumstance, the trustee could not extinguish the third party's rights, the bankruptcy court could not distinguish the third party's rights by itself. That's an Article III claim, a classic private rights claim where the bankruptcy trustee, the bankruptcy court is reaching out to take the third party's property on the trustee's claim. And what is the example of 6 through 10 that you could find that wouldn't involve the issue you have described? Because if there is a piece of property and the debtor is saying it isn't mine, it must be somebody's, and by definition, it's not the creditor's, and so it must be somebody else's. And so that other person, if there is a dispute, will say it's mine. And therefore, it isn't your answer to say to my question, too bad, the bankruptcy trustee cannot litigate, who owns 6 through 10? So long as the third party asserts a claim. Yes, yes, he can't do it. All right, then we're back to where are we with bankruptcy courts? When you have taken from them the power to litigate, what I would think is the most common claim that you and the debtor have in cases where that is in dispute. I don't think that's fundamental, because you have what you're talking about. I mean, this Court already crossed that bridge, I think, in Stern, in saying when you're augmenting the estate with third party property, you don't assume at the beginning of the Article III litigation that the other side has a claim. That's the whole point. The other side is saying, don't take my property. You say for thousands of years, I got that point, for thousands of years, this has been the law. So can you think of any case – I find it rather interesting, I'm reading about Henry II, who, in fact, created many of the laws of England. So from the time of Henry II onward, is there a case that you have found somewhere which said that the bankruptcy trustee or the bankruptcy judge cannot litigate who owns property, the bankrupt or someone else, in the state, in the estate? Well, a couple of them. First of all, all of the cases are basically the same. Breyer. Besides Stern, he means. Stern is a case of a third party and a counterclaim, and there never would have been the money in the estate had it not been for the fact that the debtor, in fact, asserted a claim, a counterclaim against a claim that was being made by an outsider to the estate. It's not too hard to distinguish Stern. But I am saying, other than Stern, I don't even think Stern. Let's go back to Henry II. Maybe you have so many you'd have to send them on a list, but maybe not. You can look at all the cases cited in both sides' brief. I think the rule is best stated in the Taubel-Scott-Kitzmiller, which is one-word case, that says when there is a bona fide claim of adverse possession or, excuse me, of ownership by a third party, that can't be extinguished except through a plenary proceeding. And that's the exact same situation you're talking about, Your Honor. There's no difference. And there's decades of that law, and that law and that rule was never disputed. And so going back now to the trust proposition, I think it's important to make clear that wellness is a certain issue. Ginsburg. Who is the third party? You said it's just, it's no different, no different than a third party coming in and saying, that's my vote. Who is the third party here? The third. There is only the trustee. This is supposed to be his mother's trust, and his sister is supposed to be the beneficiary. So who is the third party? So two, well, three. There's the trust, but importantly, during her lifetime, Sohab Wattar was the owner, the only owner of the beneficial interest in the trust assets. So she's the third party. So to the extent the bankruptcy court wants to decide for itself. I thought she was dead. When the bankruptcy was commenced, she was still alive, and she had the absence of revocable living trust. She has the absolute right to use all of those assets to revoke the trust. That's, they're her assets. If she had declared bankruptcy, those assets would have been in her estate. There's uncertainty. Ginsburg. Did she say, when she was alive, did she say, bankruptcy court, wait a minute, this belongs to me? She was in Syria, I think, I'm not sure at what point, but the point is the trust itself was an existing document and was an existing entity. And I want to be clear about something. Wellness doesn't dispute that. I mean, Exhibit 13 to Sheriff's deposition was the trust amendment in 1996. It was an existing trust. And in fact, their first primary argument, which pervades their reply brief, depends on the proposition that the trust was a real entity, because what they're saying is a version of what you were saying, Justice Sotomayor, which is that he had possession because he was the trustee of the trust. The possession only exists because he's a trustee of a trust. The trust assets aren't listed in his name. If they're not in the trust, there's no tenable theory that he is the, on the face of the assets, that they start in the estate. They're going to have to be gotten somehow. So their theory is, well, he's the trustee of a trust, and therefore he has sufficient possession. And our answer to that is simple. Not one case ever in the history of Western law that anybody has found says that trust assets go into the personal bankruptcy estate of a trustee if and when the trustee declares bankruptcy. This Court said the opposite in Hardinsburg. It said the opposite in Whiting Pools in saying that when you have only bare legal title, which is at most the only thing a trustee has, only bare legal title goes in and no other beneficial interests go into the estate. So then there's a second question, a second argument, which is that, well, because in 2002, not one year, Justice Breyer, but seven years before the bankruptcy, we have discovered these documents that suggest that he was treating the trust as trustee, was treating the trust assets as his own. Kennedy, but in the case you just decided, did the Court say who decides the question  Those cases weren't true. only bare legal title goes, but who, did it, did it go on to say that the Bankruptcy Court cannot decide who has the bare, whether you have only bare legal title? Those cases were not about that proposition. This, this is about this, this threshold proposition that because he's the trustee of the trust and in possession of bare legal title, that's all we need to know. That's their position. So, so where you have brought me so far is these cases say, what they say is you have to, you can't just grab it. You have to proceed under Section 23 and have a proceeding. But the, the proceeding, some kind of a proceeding, I don't know exactly what that kind is. You probably do. But that doesn't mean the trustee doesn't get it. I mean, it's the trustee who litigates it out. It's the trustee who decides. But I don't know what a Section 23 proceeding is. In the older cases, the rule that would apply, Justice Kennedy, would be the Talbert Scott-Kitzmiller rule. You had to have a plenary proceeding to go get it. A plenary proceeding. Where does that take place? That, that would have been, it's sort of the equivalent now. The parties are treating, I think, not incorrectly as the equivalent now of an Article III proceeding. This would have to be an ad. But it didn't take place before the bankruptcy judge? No. Well, most of these cases at the time, remember, the district court was the bankruptcy court, and the question was whether it's the exercise of summary jurisdiction versus a plenary Article III proceeding. Oh, I see the problem. A plenary proceeding. Now it would be an adversary proceeding that would have to be determined finally by the Federal court. So, but I want to get to the second point, because it's an important one. Wellness doesn't just rest on the proposition that just because the trustee is a trustee, the trust assets are part of the estate, which I think is completely unsupportable. They go on to say because seven years earlier, as trustee, he treated them as the trust assets as his own. Therefore, we should disregard the trust. That argument, I think, as I think Justice Sotomayor pointed out, is functionally indistinguishable from a fraudulent transfer claim, because they're saying based on his alleged misuse of trust assets at some point in the now distant past, we should treat them as part of the estate. We should disregard the trust, which is just like a fraudulent transfer, which it says because of something the debtor did before transferring the assets, we should disregard the transfer and treat them as part of the estate. In that respect, it's indistinguishable, and it is, in that respect, in the same way, to augment the estate. Sotomayor, just to clarify the record, I asked the question whether they were or weren't. Fair enough. And I will try to answer it, which is I think they are in that respect indistinguishable. And then if you follow from what the all of the lower courts have said, that a fraudulent transfer action is a stern claim. Well, we've said that, too. And it's held that it's basically an Article III claim in Grand Fen and in Sierra. So I think for all of these reasons, it is quite clear that the action to bring these claims into the estate is a common law action seeking to augment the estate with somebody else's property, property that Sawadwater owned during her life and that Raghda Sharifah owned upon. So give me examples. The suggested rule that I had for the Solicitor General, which he would like the broader one. But if at the time you have legal title to or in physical possession of something, then it's not a stern claim, not an Article III claim, because that is the quintessential question that bankruptcy judges decide. Sotomayor, are the things that you possess, either by title or by constructive holding or by holding? I think there's two problems with that analysis. First is that all the trustee has is bare legal title as a matter of law, does not have any property interest, which is what the current Bankruptcy Code focuses on, what are the debtor's interests in property, and it's the trustee of a trust does not have any interest, beneficial or legal interest in the assets. It's only bare legal title. So to get more interest as part of the estate, you have to have some common law way to do that, some claim for doing that, and a classic claim is an alter ego claim if that's what you think, because of something the trustee did, then. Scalia, you say that's always going to be the case, that you need an Article III proceeding whenever the bankruptcy trustee determines that something belongs to the debtor and is in the bankruptcy estate and some other private party says, no, it belongs to me. That always has to be litigated in an Article III court. I don't think this Court needs to decide that. That's not quite the question here, because the property interests from the estate are outside the estate. I understand that, but isn't that what you're arguing? I would not be surprised if this Court were to hold one day that if a third party has a claim to property, comes into court and says, that's my house, I know the debtor says it is, says it's his, and the trustee thinks it is, that's my house, that that person is entitled to an Article III adjudication for his or her rights to distinguish. Breyer, that's exactly, that's what I think, because it's interesting. I mean, I've read the page you have there now of the cases, and I see you can, the Constitutional question is the deepest one to me, is we do have a constitutional provision specifically giving to Congress the authority to create a uniform system of bankruptcy courts which have served our economy well, I think. That's what I read, makes us richer. And on the other hand, we do have the question, as you point out, that this is determining a title where there are two people under State law contesting it, and so which prevails. And until, I think, Stern, it would have been Congress's delegation, maybe. And what is the strongest argument for not giving weight? These are sort of like administrative agencies defining, you know, deciding things that never had anybody done before. What's the strongest argument? No, don't do it. It might gut the bankruptcy court, but don't do it. Or maybe you want to say it won't gut the bankruptcy court. Fisherman, that was my answer, was I don't think it will gut the bankruptcy court. We think this is just a straightforward application of where we already are with Stern. Breyer, but it's just straightforward. I agree with you to this extent. It's either Stern marches forward or it's, I'd say, steps in place. Well, and I don't think we're pushing Stern forward. I do think we're just applying Stern. But I also want to address your point about uniform bankruptcy code. I think the fact that this Court has long said and understood, and lower courts have accepted, that bankruptcy law takes State law and property rights as defined by State law as they find them. That's all we're talking about here. To the extent there is a State law property dispute between a third party and the debtor-slash-bankruptcy trustee, that doesn't change the uniformity of the bankruptcy code. And I suppose the constitutional provision authorizing Congress to establish a uniform law of bankruptcy does not authorize Congress to establish bankruptcy courts that can decide questions which would normally be decided by Article III courts. That's clearly right. You can establish bankruptcy law, but it's going to be an Article III question, the extent to which the bankruptcy courts can exercise judicial power. I just want to answer one more point on Justice Sotomayor's question. I had two responses. The second one was that physical possession is not a great test. As this case shows, Sharif as trustee didn't physically possess anything. If anybody did, it was the banks where the trust assets were. So you can't think about it in terms of physical possession. Breyer, let's let me recede with this question one more step, that every day of the week administrative agencies change State law. Every day of the week they change State law, even involving property. And in such a case, the question is whether has this administrative agency under authority of Congress changed State law affecting people's property rights in a way that deprives them of due process of law? Have they gotten fair procedure? And so is a possible answer to your problem, if the procedures of the bankruptcy court are fair when they litigate these questions of property right, the fact that they do affect State law and take property among persons switching it is not forbidden by the Constitution, where it indeed is authorized as part of a uniform system of bankruptcy law? I think due process viewed that way is not sufficient. I think, again, this Court answered that question in Stern. There wasn't a claim that there wasn't going to be due process for the disposition of the property rights there. The problem was that the bankruptcy court was exercising the judicial power of the United States in entering a final judgment. And if I can turn to that argument, I will. Stern itself is based on a structural separation of powers concerns that private rights of this kind are exclusively committed to by the Constitution to Article 3. It's about the exercise of judicial power, which entails the implementation and enforcement of judgments of the United States that are entitled to full faith and credit by courts both in the United States and elsewhere pursuant to treaties. They are precedential. They can be law – they are law of the case in what can be very complicated cases that stretch around different courts and go on for years. That's why the arguments you're raising now, any different as applied to magistrate judges? If we rule in your favor in this case, are we calling into question our acceptance of magistrate judge positions? Well, a couple of points. First of all, with respect to magistrate judges, it's only with respect to final adjudications. Magistrate judges could still perform their functions. Sotomayor, your answer is yes, because you can do – on expressed consent, you can do reports and recommendations. As to final adjudications of private rights matters, magistrate judges could still do something, could still litigate and resolve public rights, whatever those kinds of rights and matters are. But I do think it would be difficult after this case to say that a magistrate can exercise judicial power of the United States to enter a final judgment based solely on consent. I think this Court answered that question in Schor, effectively. Schor would have been an easy case, an incredibly easy case, if consent alone were enough, because that was an issue in Schor, and the parties there did consent. But the Court didn't stop with that one sentence, the parties consented, that's all we need to know. The Court went on to do an elaborate analysis of the structural concerns involved and why there were no structural concerns such that the consent was sufficient. And when you boil it all down, basically what Schor said, which is what I think the Court recognized in Stern, was that the structural concerns exist when you're talking about the adjudication of a private right. Sotomayor, I agree, but we didn't say that you couldn't consent in Schor. I understand that. I'm just saying it would have been a very easy case if consent were enough. And the Court, nevertheless, went on to say consent is enough here because we're talking about what is basically a private right. Sotomayor, and there you give up. I understand that. And arbitration is fundamentally different. Arbitration is not the exercise of the judicial power of the United States. An arbitrator doesn't issue a judgment. It's not entitled to full faith and credit. It's a fundamentally different kind of exercise of authority. Kagan, Well, but he issued something which has to be enforced by a court, except in very extraordinary circumstances. You know, there's much less supervision over the arbitration system than there is over a typical bankruptcy court. Right. But the decision by the parties to go to an arbitrator, which, by the way, is their own decision, what arbitrator they choose is their own choice, the arbitrator is not controlled, the salary of the arbitrator is not controlled by Congress, the tenure of the arbitrator is not controlled by Congress, and when the FFA, the FAA, it's very little different. Kagan, Well, I mean, I agree, all those things make it worse. You know that this is a proceeding that's totally divorced from any kind of control by anybody, and yet Federal courts under the Arbitration Act simply have to rubber stamp it and say it's valid, except in extremely unusual circumstances. But that's pursuant to Congress's Article I power to say here's a type of contract that we're going to say is enforceable under a particular situation. That's all arbitration is. Scalia, This is just contract law. Kagan, Right. Scalia, I mean, they're just enforcing the party's contracts. Kagan, This is the party's contract. I mean, the entire question here is that the parties are consenting to go to bankruptcy court, and the question is, will that consent be sufficient in the same way that it is in the arbitration system? Scalia, I understand, but it adds the element that what you're consenting to, by hypothesis, is the exercise of judicial power. By the entry of a judgment that will be given full faith and credit, the entry of a judgment by an entity that is subject to. And that's what happens in arbitration. You're agreeing to the entry of a judgment of an award, and perhaps not even, because you don't even put that into the contract. Congress is saying, we're going to do it anyway. Fisher, What I'm saying is you're not consenting to the exercise of the judicial power, to the dilution of the Article III court's authority to issue judgments that are precedential. Kagan, Please, I'm sorry. Fisher, Well, that's all I was going to say. Kagan, You know, I understand that formalism matters in many contexts, but the fact that the arbitrator himself doesn't issue the judgment and instead you have to take it across the street and the Federal court has to issue the judgment, basically on the arbitrator's say-so, again, seems to me, I mean, the arbitrator case seems to me much more threatening to the integrity of the Federal judicial system than a system of bankruptcy courts which are, from the very beginning all the way through, supervised by district courts. Fisher, Well, I mean, the key difference, though, I think, is that, as I said, bankruptcy courts are exercising judicial power. Arbitrators aren't. And then when the district court in an arbitration proceeding, all the district court is doing is enforcing a judgment, excuse me, enforcing an arbitration award, a contractual choice, pursuant to a congressional judgment that says, here are the rules, the decision rule for enforcing this particular type of contract. That's an Article I issue. It's within Congress's Article I power to constrain, to establish the decision rule that the party, the entity exercising judicial power will apply. In this situation, the party exercising, the entity exercising the judicial power is a non-Article III court. It's as if you said, you changed the FAA and added another paragraph to say, an arbitrator's awards are exercises of their final judgments of the United States entitled to full appellate review by the, by appellate courts. Sotomayor, could you spend a moment just talking about the forfeited argument on appeal? The argument that consent can be presumed from your forfeiture of the argument on appeal. And I'm glad you put it that way, Your Honor, because I think they're different points. The law clearly requires consent, and I think everybody agrees it requires knowing and voluntary consent. You have to have at least that. The rule, which we think is applicable and agree with the American College of Bankrupt and Bankruptcy, that the rules writers and this Court in implementing the rule required express consent. And I don't think there's a credible argument here that there was express consent. And I think this Court ought to adopt express consent as the requirement and hold that there was not express consent here, precisely for the constitutional avoidance reasons that Justice Scalia mentioned earlier, to avoid getting into the whole discussion we just had. Because if there's insufficient consent here, then we don't need to decide the circumstances under which consent is insufficient. But isn't forfeiture quite different from consent? It's not a species of consent. It's different from consent. And I'm sorry I delayed getting to Justice Sotomayor's question. The reason there's no forfeiture here, among the reasons, is that this was a problem of appellate jurisdiction. There was no appellate jurisdiction here because there was no final judgment in the Bankruptcy Court. If our first argument is right, then the Bankruptcy Court lacked authority to issue a final judgment. So when we went up to appeal, quote, unquote, in the district court, there was no – it wasn't permissible for that court to exercise appellate jurisdiction. Alito, do you think a final judgment has to be a valid final judgment in order for there to be an appeal? It can be final and it can be invalid. Well, it's not a question of being a defect. I think the problem here is there is an absolute lack of any authority to enter a final judgment. There wasn't something from which the district court had any authority to exercise appellate jurisdiction. That was the problem. It wasn't much to fail. If the court enters a judgment against you and you say that court never had jurisdiction to enter that judgment, you can't take an appeal because there wasn't a final judgment because the court below lacked jurisdiction. That's the argument? Well, no. The argument would be if on – at any point on appeal, I can raise the problem that the court to which I'm appealing lacks appellate jurisdiction, lacks jurisdiction to resolve the case. That's the kind of non-waivable problem. And if something that cannot be waived also can't be forfeited. And so that's the reason that there's no forfeiture problem here. Beyond that, it's quite clear that Mr. Sharif made every effort to preserve the issue to the extent he became aware of it. It was only six weeks after Stern was decided that he filed his opening brief, did not cite Stern, that's true. But only a month or two later, his sister, Raghda Sharif, files a motion to withdraw the reference, and then he immediately, essentially, his lawyer, realized what's happened. As soon as he's aware of the Stern argument, as soon as the Seventh Circuit issues its decision in Ortiz actually applying Stern, then he promptly raises this issue. He's not sandbagging. There's no gamesmanship here. As soon as it's clear that he understands that his consent was required before what happened to him could permissibly happen, he demonstrated that he did not consent to the exercise of that jurisdiction. Now, of course, our primary submission is the Bankruptcy Court never had that jurisdiction. And to we think that's a correct argument, but to avoid that argument, we think the simpler approach for this Court is to say that express consent was required, it wasn't satisfied, or that if implied consent was sufficient to apply what this the Court found implied consent only because, quote, the litigant or counsel was made aware of the need for consent, didn't happen here, and the right to refuse it, also didn't happen here, and still voluntarily appeared to try the case. Further, the Court emphasized in Rohl, the party later actually did consent in writing. That also didn't happen here.  So we think that if implied consent and Rohl were sufficient, and for that reason we think the Court should affirm the judgment below. Roberts Thank you, counsel. Ms. Stagy, you have five minutes left. Stagy In response to the test that Justice Sotomayor proposed about possession, that in fact under the historic cases, the Tobel-Scott-Kitzmiller case, that's the easy situation. The situation we have here where the debtor has actual possession of the property. And we don't contend that Mr. Sharif had just legal fiction as a trustee possession. This was the house he lived in, the business he ran, his own retirement accounts, and his own bank accounts. These were assets he was enjoying while trying to take advantage of the bankruptcy system, having, not coincidentally, left an Article III court where he was litigating and where the Article III judge had held him in contempt and thrown him in jail several times. So he made a choice to go to bankruptcy court. He had actual possession of these assets, and that, under the historic precedent, has always been the easy case for the bankruptcy judge to decide. That case goes the other way, but that's because the litigant was trying to bring a preference action. What was happening in that case is the sheriff had seized some property, and the argument was he had done it within what was then a four-month preference period, and they were really trying to bring a preference case under the constructive actual possession. That's different than a situation with the debtor that has actual possession of the property. And so when you look at these cases, whenever it's the debtor who has possession, going back to the historic English law, the courts have always allowed the bankruptcy referee or judge to make that determination. With respect to the cases that were discussed, the Whiting Pools and the State Bank of Hardinsburg case, neither of those cases actually involved trustees. Whiting Pools was decided shortly after this Court decided Northern Pipeline. Northern Pipeline was cited in that case, and that's a case where the bankruptcy judge's judgment ordering the Internal Revenue Service to return property back to the Chapter 11 debtor's estate because it belonged there, subject to their rights as a secured creditor, the Court upheld that. So I don't think that stands for the proposition that bankruptcy judges don't have  With respect to the issue of consent, yes, this does have an impact. You know, our argument is very much based upon the fact that the Magistrate Act has been held, upheld in Rowell and Peretz and Gonzales. There is authority in the Fifth Circuit, six of the judges in the Fifth Circuit have issued a dissent in a bankruptcy case saying that they see no basis to allow the magistrate system to exist, given that the Fifth Circuit has held that 157c2 consent is unconstitutional. So you do have a circumstance where the courts are, the lower courts anyway, are seeing the two systems as the same, and they are the same, because the Article III judiciary has control over the bankruptcy process at every step. It refers the cases to the bankruptcy judges. It can take them away. Anyone who ever has a problem with the bankruptcy judge can always seek a motion to withdraw the reference, and it's the district court judge who decides that. There is also macro control over the system in the sense that bankruptcy judges are appointed by the Article III courts, they can be removed for cause by the Article III courts, and for all of the reasons that the courts of appeals that address this issue unanimously across the board and upheld the magistrate system, all of that rationale in those cases applies to the bankruptcy system. Breyer, Tobel, Scott. Yes. Well, he says that they say that where possession was assertedly held, not for the bankruptcy, but for others prior to bankruptcy, the party in possession was not subject to summary judgment, could be divested only of the plenary suit under Section 23. By that I take it he means it's this case, it's true that he said he was trustee, his mother says no, no, it is my property or whatever, and therefore that fits within that case, and therefore this is one of the ones that went to a full court and didn't go to the bankruptcy judge and says that's this case. What's your response to that? But that's not this case, because the debtor has possession, and Tobel, Scott, sets out five circumstances in which we have plenary or summary jurisdiction under that statute, and on the easy side of the line, on the constitutional side post stern, is debtor's possession of that property. You can't make a claim like we have here, and Wellness never conceded that the trust was valid. That was the dispute before the court. You can't let a debtor, well, you can, but you can't, it would be very difficult for the system if a debtor were allowed to say I don't really own it, I'm using it, I have it. The money here is in his bank account, that's the point. Yeah. I mean, you would have a circumstance where the bankruptcy judge would have no authority, and Mueller v. Nugent decided back in 1902, recognized that, and said you would have courts that would have no ability to supervise the system that they're charged with supervising. Thank you. Thank you, counsel. The case is submitted.